I'll take ten and five, please. Ten and five. Five minutes for rebuttal. Yes, sir. Your Honor, the only question in this particular case, the facts are obviously undisputed, the only question is, was the appellant lawfully admitted for permanent residence as a derivative of his father's immigration visa? Your Honor, this appellant has been literally in limbo under our U.S. laws. He's been at this now for approximately four years. He's actually here in the courtroom today, and just trying to do what is all American to get his citizenship. The government's denial of his citizenship goes against the great way of any evidence that is placed. Any cases, and by the way, this is unprecedented in this circuit. There's only two circuits, the Fifth and Eighth Circuit, that looked at this issue, but not at this issue. They dealt with federal criminal matters, criminal appellants, applicants for the citizenship. And the BIA decision, Board of Immigration Appeals decision, with Khan, dealt with a father that passed away. If we've got the law, the statutes, the regs, whatever, that say, in a case of derivative citizenship, the principal has to be admitted as a derivative. He has to arrive prior to the person who's operating on the derivative visa, and this is reversed. I mean, isn't that pretty clear on its face, and how do you get around that? say, from Beirut to the U.S., or from France over to the U.S., and the father happens to get sick, and he ends up landing before his father. So does that mean this individual is no longer available to get citizenship in this country? It seems like that's factually distinguishable, because, you know, at least that's viewed as a contemporaneous, even though, you know, the journey started together, and something happened, and, you know, as you said, the person got sick. But here, wasn't there months between the arrival? Fourteen days, Your Honor. 24 days. I'm sorry, 24 days. Why did your client arrive 24 days before his father? I believe, Your Honor, it was something dealing with logistics of matters that he ended up arriving before he left before his father. I think his father was supposed to be going with him. He had some matters he had to address back, and he came before him. But his father had things he had to address? Yes. Yes, Your Honor. How did he get around the reg, though? Code of Federal Rights? Well, that's what I want to get to, Your Honor. The regs also say that if you do certain conduct, if you're not lawfully admitted, you have five years. The government has five years to sit there and either do rescission proceedings or go through normal proceedings of entering a removal order against you. Once you don't do that, it is clear from all the proceedings and clear from the case, at least the only case that's ever really addressed this particular matter in Texas in similar circumstances, was that you are now an LPR. You are a legal permanent resident. Therefore, you can apply. But the cases that the government relies on and the cases that we believe the Honorable District Court, lower court, was in error on is that she relied on matters that have already been, the person's already, the applicant's already been deported or the applicant's rescission proceedings have happened. And that's totally different than these circumstances. If the government would have took action and started rescission proceedings and removal proceedings, yes, then they would have that claim. That's what the existing law says. Counsel, here, correct me if I'm not understanding this, but the government's not trying to deport him. He is still an LPR. Is that right? That's the problem, Your Honor. Yes. Let me finish. Yes. But the government says that he was not, he is not an LPR lawfully admitted because he wasn't lawfully admitted back then, but now the government has stopped from denying his LPR status because of the five years. So, I mean, you know, there's a lot of funny rules, but aren't the rules then fairly clear? The government is following the five-year rule. They're not trying to revoke his LPR status, but they're saying that he didn't follow the rule when he came in. Isn't that what the situation is? That's the problem, Your Honor, is Congress, the rules of Congress about unity. Then he's in limbo. He's basically, they can't take his green card away. He's not in limbo. He's an LPR. He can stay here lawfully. But, Your Honor, the flip side of that, he can never become a citizen for the rest of his life. Well, the judge then, and I'll ask your colleague as well, Judge Battani at page nine says that petitioner can petition for an adjustment of status. In effect, I guess he would ask to be called an LPR lawfully admitted, and if the government gives him that, then he can apply for citizenship. We've tried that, Your Honor. We've tried that. You have to go to the CBP district council on that. There's a process. We did that, and they denied it. It's discretionary. Was that subsequent to this decision or previous? Yes, subsequent to this decision, Your Honor. We've had conversations with the U.S. attorneys. Your Honor, everyone is sympathetic to the circumstances, but there is no clear law. What they're trying to adopt is absolutely the rules on that. This individual now is in limbo. They can't remove his green card, but yet he can get his citizenship. And that's not what Congress intended, Your Honor. then why not 24 weeks or 24 months? What kind of standard could you use to say that you are accompanying someone if you are quite a long time ahead of them? Your Honor, the burden, basically, there has not been a case in this country that said what exactly, in these set of circumstances, where the derivative comes before the principle, and the principle actually arrives, because the key and the test is this, and this is, if we get anything out of these arguments, the test is this, if the principle has secured LPR, the derivative has secured LPR. The test is on the principle, not on the derivative. The case law that they assigned to you is on the derivative. They're dealing with criminal aliens. They're dealing with individuals that have never protected it. Citizenship, that the burden is on the applicant to show that they met all the requirements and turned all the square corners. And that is correct. They have not shown one case, Your Honor, under these set of circumstances where the principle actually came and became an LPR, and then the derivatives was not. The opposite is true. If the principle committed fraud or didn't perfect LPR, then the derivative is no longer. It doesn't matter what age they come in. But they're relying on the language of the reg, aren't they? The language says that's why they have the five years. They have five years to take action, Your Honor. If you do not take action in five years, you basically waived it for all intents and purposes. Where is your case? What case can you cite as for that proposition? It's the common logic, Your Honor, as to the five years' rescissionary period. I'm asking for a case. Do you have a case? Neither do they, Judge. I'm asking, can you cite me a case? Your Honor, there isn't. But there's common law sense in the idea Congress intended under the Santiago v. INS, that it's to preserve the family unity. What they're doing here is not preserving family unity. So this situation, this dilemma that they're in in the sense that they can't deport him, right? I mean, citizenship is very valuable. I would be the first to say that. But the five years, there's nothing in it that talks about citizenship, is there? It talks about revoking your LPR status. Exactly. And if you don't revoke your LPR status, then you are an LPR. And if you're an LPR Well, but you have to be an LPR lawfully admitted. That's the government's position. You have to get around the lawfully admitted. Congress, Your Honor, would not just make laws just to make laws. What is the purpose of the five years, then? What benefits does it give you that you have five years? If you're being deported, that's a pretty good benefit. It keeps you from being deported, but then your constitutional rights are being deprived because you're not being able to be a United States citizen. You have no constitutional right to become a citizen. There's a constitutional right to be equal protections and equal evidence, Your Honor, as to be able to get their citizenship. You probably would agree that what happened way back in, what, 1995, was that the government made a mistake. I mean, under their rules and regulation, they shouldn't have admitted your client when they did, because he was not accompanying his father. Well, they made a mistake, right? They made a mistake that could have been cured under Section 212K, Your Honor. At that time, they could have gave a discretionary decision. Tell them, here, fill out this 212K waiver, we'll admit you. They do that for criminals, but, yeah, for innocent individuals, they cannot do that. That's not the intent and spirit of what Congress wanted, Your Honor. All right. Well, let's say I assume the government will concede, yeah, we goofed up 24 years ago. Sure. All right. But then we have the BIA has this case, and I can't hardly pronounce it, Koloa-Mantangi in 2003. And it basically says that the fact that the government made a mistake doesn't mean that you're lawfully admitted. Now, how do you get around the BIA decision? You get around those decisions, Your Honor, because those cases dealt with criminal aliens. They dealt with criminal aliens, Your Honor. There's a distinction. You can't commit fraud. I don't recall that case saying we're only doing this because it's a criminal alien. That's why it's fact-intensive, Your Honor. It's fact-intensive because they look at it. There is no case where the individual was innocent, innocent party, where the principle was also an LPR, that they actually were denied that. Actually, the only case they ever addressed that. You know what, I think you're right about that. The only case they addressed that, Your Honor, was Texas, and they ruled in our favor. This would be a case of first impression if we say, okay, where there's no criminal problem and all that, we're going to go around and have to set aside this, not apply the reg or the statute, because he has no other reason to not be given citizenship other than that he was not lawfully admitted due to the reg. You're asking us to do something that hadn't been done before. Well, the judges every day, Your Honor, interpret statutes in certain ways. I've seen them done it. We've been through this numerous times. Counsel, if I could just ask one other question. So I think we've all come to the conclusion that there is no case that is factually on point for either side. So that being the case, what is the authority that you rely on to get us to the point you want to get to? Your Honor. As succinctly stated as you can. First of all, Your Honor, the case from Texas, the regular case, is, I believe, the closest on facts, because that dealt with an innocent individual 13 years later than saying he's not an LPR. That's the only case that dealt with non-criminals. That's the only case that dealt with LPRs, principals that have been secured. Every other case that it deals with is totally different facts, totally different circumstances. And I agree wholeheartedly with the position of those rulings, because you can't just commit fraud on the government and then get away with it and say, hey, I'm here now. You can't do nothing about it. Or the principal alien dies before they arrive on. So that's a fundamental ruling in immigration.  The interpretation that the unity statute, the five-year recession, common sense dictates that you look at what the statute. It sounds like your time has expired, unless my colleagues. I'm sorry. I just wanted to, what you said, the Texas case, what was the name you gave it? The Texas is the regular, if I'm pronouncing it correctly, the regular Agarwal case. Oh, Agarwal. Okay, I've got it. Thank you, counsel. You'll have your five minutes for rebuttal. Thank you. Thank you. May it please the court. Patricia Gaedeke representing the United States. Judge Boggs, you exactly captured the situation. This young man entered the country 24 days before his father. He and his father knew that he was being allowed to enter the country as a lawful permanent resident only if he accompanied or followed his father. Those were the terms of the visa. He didn't accompany or follow his father. He preceded his father. Now, the record here doesn't show why he came first. His counsel says it was some business matter that delayed his father. But he was 19 years old. He was not a child that was brought here not knowing that he violated the rules. He presumably knowingly entered not in compliance with the terms of his visa. Yes, the officer who inspected him should have figured out that his father had not preceded him and should have denied him entry. He should have been turned away at the border. But he made a mistake and he allowed him in. And that mistake was not discovered for five years. Well, it was not discovered for 17 years. But after five years, a statute of limitations kicks in and the government is precluded from rescinding his lawful permanent resident status. But it is not true, as the petitioner would have it, that because we can't rescind his lawful permanent resident status, he therefore becomes a lawful permanent resident whose entry was regular. It wasn't. Regular is not the word. It's lawful. His entry was lawful. Lawfully admitted. His entry was not lawful. The issue is not who's to blame. I mean, if you ask me, I would say the immigration officer ought to be more knowledgeable than even a 19-year-old about the meaning of accompanying. But the sticking point for me, which is on your side, is if 24 days is okay, why not 24 weeks or 24 months? I go back to the question I raised with your adversary, though, about Judge Battani saying that he could petition for an adjustment of status. And he says he's tried and it's been denied. Are you familiar with any of that? Well, there's certainly nothing in the record about that. Okay. He also said just now that when he entered, if one or both of the parties had noticed the problem, he could have gotten a 212-K waiver. Are you familiar with that? I am, and I don't think that's correct. Because? Because he would have to have been turned away. Right. Now, when he entered, if it had been noticed, he could have left the country and waited for his father. Yeah, because they would have said, you know, go up to Canada. That would have been the appropriate thing to do. Or any time in the next two years, before he turned 21, he could have left and reentered. Because he had to be under 21. Tell me what the 212 waiver is, because I'm not familiar with that. I'm not. There are several waivers that are possible, and it was under an old statute, and I don't exactly remember. I'm not sure what the 212 exactly is either. Okay, go on. Going back to Judge Battani's statement, you said you're not familiar with what they may have done, and it's not in the record. But what do you think Judge Battani was referring to in her opinion? The case that she relied on from the BIA talks about a person who entered the country not as an immigrant. And the BIA allowed a person who had entered on a tourist visa, an overstated tourist visa, to adjust status to lawful permanent residence, even though – At this point, again – But he can't do that. Judge Battani uses the word about adjustment of status granting him LPR status. But the problem here is he has LPR status. Exactly. But is there a thing which says you can adjust to an LPR lawfully admitted? No. You just don't think there's any way to do it? No. Ever? And I don't think the case that she relied on would have allowed – Well, she's not relying on a case that I read in – I think she was relying on the NOW law. The matter of NOW law. Right. But there, she's using that – Because in that case, they allowed adjustment of status for someone who had actually in time preceded her husband, but she hadn't entered on an immigrant visa. She had entered on a tourist visa. What is the government's rationale for requiring that the – I mean, after all, they gave an LPR status to the father and derivatively to the son. So what is the reason that he has to technically accompany, and why does that have to be so strict that he can't precede? It's in the statute, Your Honor. Well, I know. But is there any rationale for that, or is that just sort of arbitrary? I think the rationale is this family unity thing. You don't want people sending their kids ahead as grappling hooks, you might say, and then coming along later. I guess that's Congress. And they were probably not contemplating the older child scenario, although it allows for children up to 21. So, I mean, this is a case where the father, in fact, came. I mean, the case that your adversary cites was the child comes first and the father dies and never comes to the country. Okay, that's understandable. But here the father did come, and the father is now a naturalized citizen, isn't he? But Congress has made very strict rules about who can enter. This person who's applying now was only eligible to come in as an accompanying or following dependent. His father only got ability to enter because he was the brother, I believe, of someone who had been allowed in as a lawful resident. But the father, nothing wrong with what the father did. No. Going back to the quotation. But Congress has made very strict rules about what degrees of relation and who can enter. But going back to what Judge Battani said, you're right that she is sort of referring initially to this Nalu case. The quotation doesn't seem to speak about it only applying in the case of an overstay initially. You say that's a factual distinction, but the quotation, once the principal gains permanent residence, which did happen here, the child is not precluded as a matter of law from adjusting status as a person accompanying or following to join. So it would sound as though, at least in principle, they could adjust his... I mean, all the time we adjust status to things that didn't really happen, right? So here you would adjust his status by saying that he accompanied. I just don't want to give you a false assurance here. Well, I mean, you never have assurance. Say your adversary says they actually tried it and had been denied as a matter of discretion, and he may well be right. I think it's likely that that would be denied. Among other things, now he's not under 21 anymore, so I don't know. We're trying to really, though, adjudicate what happened in the past. You adjust. I mean, at least a clever lawyer would say we're not trying to make him 21 again. We don't like that. But we're trying to adjust the status of how he entered. But the only question before the court, before Judge Bottani, was the naturalization question. These other questions. This may be irrelevant. As I understood from reading the entrails here, this partially started out with a concern about his tax status, but then that got fixed, that it wasn't his problem, it was somebody who stole his identity. Is that basically right? I don't know why they dropped that, but, yes, there was an alternate basis for denying naturalization. Or is that what they dinged him on to start with, and then they uncovered this problem? Well, I think they would have gone back and looked at all of the records in a naturalization example. This is sort of a technicality, isn't it? Something cries out here, sort of equity. Can we do equity or not? You can't. The Supreme Court has said that a number of times, that the courts have no equitable power to confer naturalization. You think he might just be stuck because of what happened 17 years ago? Yes. Well, stuck. I think that he entered irregularly. He should not have been allowed to enter when he did, and because we didn't catch it soon enough, he has been conferred the effective status of lawful permanent resident, so he's going to be allowed to stay here permanently, barring that he commit some crime that would allow him to. I want you to respond to the hypothetical that counsel gave before, and I want to just sort of embellish it a little bit. Let's say that you have the principal and the derivative who began a journey to this country together, and I think under his hypothetical there is an illness that occurs, and the principal is hospitalized in Amsterdam, let's say, for a month or so. The other person comes on to this country. In that situation, I mean, that person comes on under the derivative statute. In that situation, is that accompanying or is it not accompanying? Because they commence the journey together, but mid-journey something happened, and there was a necessary departure for health reasons. The person didn't die, but came later. Can that still be deemed as an accompanying situation? I don't think it would be accompanying. I think that the- It's not broad enough to include a set of facts like that. I think that the accompanying minor or other dependent would need to stay with the ill person who is the only person who is permitted to enter as an immigrant. Again, what should really happen in that case is that the agent or the immigration agent says, you're accompanying, where is the person you're accompanying? He says, he's back in the hospital in Amsterdam, and the agent says, sorry, you better get on the plane and go back to Amsterdam. I mean, that's unpleasant, but it's not as unpleasant perhaps as what's happened here. Exactly. Anything else? I did just want to mention that there is a case that we supplied in our 28J letter, which is the only case where this issue of the definition of legal entry comes up in a naturalization case. That's a Third Circuit case of Kozelnik, I think is how you pronounce it, 828 Fed Third 175. Sorry, can you spell it? K-O-S-Z-E-L-N-I-K. We did send a 28J letter. It's not different from all the other cases cited at pages 8 and 9 of our brief in that it says that the definition of entry should not differ between a fraudulent entry and a mistaken entry, but it does arise in the context of a naturalization. Almost all of the other cases, as Mr. Ayotte points out, arise in cases where there's been fraud or criminal conduct, and that's because they, in my view, that's because they arise in removal proceedings and they're BIA decisions reviewed in the courts of appeals. And is that why this case came through a district court? Yes. In immigration cases, we don't usually see that. Is that because citizenship decisions go to the district court by statute? Exactly. So it's fairly unusual, and the only one of these circuit cases that I've identified that involves naturalization and thus came from the district court is this Kozelnick case. And it also has some useful language about how the statute of limitations prohibiting the rescission of naturalization or the rescission of lawful permanent residence status relates to whether naturalization can occur. Okay. Thank you, Your Honor. All right. Mr. Ayotte, you have five minutes for rebuttal. Yes, Your Honor. Just to answer a few questions just to counsel speak in reference to, in Landon Molina v. Holder, the phrase accompanying or following to join, Congress intended to preserve the family unity by permitting an alien who qualifies for an immigrant status to bring his family with him or to send for them on a later date when his ability to do so. The flip side of that is, and this is what this term accompanying or following to join is, they don't want the derivatives to show up early and then, Lord and behold, something happens to the principal, he passes away before he even hits U.S. soil. That makes logical sense in that. But at the same time, Congress intended for the family to be together. And, Your Honor, to go back to your question, on our appellate brief on page 17 we indicated you have the power to fix this. You are the only individuals that could fix this. You are the only individuals that could possibly give justice to this. The doctrine of absurdity gives you the power to do that. And it says it allows this court to avoid the absurd result, namely forcing Mr. Turfey to remain in limbo forever. Courts are able to look behind the plain meaning of a statute when a literal reading would produce absurd results clearly unintended by Congress. That's in Ray Voss, Church of the Holy Trinity as well, as well as public citizens, and it goes on and on. So, I mean, you have the power to address this, especially when the results will be absurd. That's not what Congress wanted. Congress wanted unity of family, family of unity. And lastly, the decision, if you look at the judge's decision, I really think she misunderstood the process of the LPR status. She relied on La Rosa versus U.S. Department of Homeland Security. In that case, basically, again, it was an individual that went through removal proceedings. The government, a.k.a., did exercise their right within the five-year or permanent removal proceedings. So, yes, then they can say you are not lawfully admitted. But government, you can't have your cake and eat it too. If you don't start proceedings within five years, then that's it. You don't get to wait another 35, 40 years and then say, when someone applies, then say you're denied. The fact is, imagine the outcome. The government and Congress never intended this. If I wanted to have absolute control of our citizens, we're going to become citizens, foreigners, I would just make a mistake, wait until whenever I want, another five, 10, 15, 20, 25 years, and say, oh, you're not lawfully admitted, you can't get your citizenship. You can't get your citizenship, you can't get your citizenship. That's not what Congress intended. And that's why the five years is there. Congress cannot possibly look at every possible scenario, factual, apparent in history that's happened. I can host whole different scenarios. And Sister Counsel said it. They're both on a plane, one gets sick in Amsterdam, now this poor kid, once he enters because the officer lets him in, he can no longer, he's been here for 21 years, he can now no longer get his citizenship. That's not what Congress wanted. It's holy, it's morally, it's principally unfair. It's unjust. Lastly, there are waivers. There are 212 waivers. There are waivers for criminal aliens. There's a whole bunch of different 212 waivers. There are waivers for criminal aliens. You've been convicted. You're normally not allowed entry back there. You can apply for a waiver and be admitted. They could have, the officer could have easily gave them a form of 212K waiver, said, okay, this is a discretionary decision, I'm going to allow you in, done deal. Or he could have obviously told them, you need to go back. The answer to that, who knows as an arriving alien that this word of joining, following to join, anything of that nature. It's very unfair to put it on the vulnerable immigrant coming into the United States, especially when they messed up and they want the alien to pay the price for it. Counsel, just what was it you said about the type of conversation or application, whatever you had made? My note said CVP, but I didn't understand it. Your Honor, the judge, and I sincerely think the judge maybe thought, again, I think she really didn't understand the process of the LPR process, because from a decision it makes that she doesn't. But that's what she suggested. So we then emailed the U.S. attorney herself and asked for this. Then Ms. Thomas, who is supposed to be on this case, I have the email. I can show you on the phone, Judge. It says basically, here's who you need to contact. It's up to them to do this. So we did that. We immediately sent a letter asking for discretionary relief under these set of circumstances, what have you. They denied it. It's the Customs and Border Protection Council. That's the word I didn't get. I'm sorry. I've got that now. Go ahead. The Customs and Border Protection, the council for the Customs and Border Protection, we applied for them and it was denied, Judge. So, again, it's simply unfair, Your Honor. This individual is calling upon this court for justice and you are the only ones that can deliver this justice. You say we do have the power to do equity? You can frame it in the line. There may be equitable results to have it, but it's not about equity. The rules don't say you have the power to do equity. You have the right to Statutory interpretation. Statutory interpretation. Yes, Your Honor. Yes. Not equity, but statutory interpretation. Thank you, counsel. Case will be submitted. The clerk may call the next case.